STATE OF IOWA v. GUY BAKER, Appellant.

**Criminal law:** BURGLARY: BREAKING AND ENTERING: EVIDENCE. The crime of burglary may be committed although the purpose of breaking and entering was not accomplished. In this action the evidence is held to justify a finding that the purpose and intent of defendant in entering the building was burglary.

It is also held sufficient to sustain a finding that defendant broke and entered the building.

**Same:** MISCONDUCT IN ARGUMENT. In view of the evidence relating to the identity of defendant, and the evident purpose of counsel in referring to the same to impress upon the minds of the jury the fact that from the situation of the complaining witness she would be likely to be able to identify the defendant, the argument of counsel is held to have been without prejudice.

*Appeal from Wapello District Court.*—HON. FRANK W. EICHELBERGER, Judge.

THURSDAY, JULY 7, 1910.

THE defendant appeals from a judgment convicting him of having committed the crime of burglary.—*Affirmed.*

*A. W. Enoch,* for appellant.

*H. W. Byers,* Attorney-General, and *Chas. W. Lyon,* Assistant Attorney-General, for the State.

LADD, J.—At 7:30 o'clock in the evening of October 25, 1909, Laura Stokes retired. Before leaving the room, her mother placed two $10 and two $5 bills in a paper box and put it beneath a mattress at the head of the bed, and then left the house. Laura fell asleep. She was awakened by somebody removing a ring from her finger. His warning was, "Don't hollo, or I will kill you." But she did hollo, though not loudly because scared, and he then found the box, removed the money therefrom, and, having covered her head with a pillow, took a vaseline bottle from a dresser. A brother was then heard to bid his wife goodnight, when the intruder threw the bottle at the lamp and ran. He fell, but escaped through the front door. The ring was found on the floor as was also a $5 bill torn in two parts. A lamp was burning but turned half down, so that Laura positively identified defendant as the person whom she saw in her room. This he denied, but the evidence was such as to carry the issue of his identity as the person who seized the ring and money to the jury. In insisting that because of the money and ring having been dropped, the design to commit a public offense should not be inferred, appellant seems to have overlooked the rule that the crime of burglary may have been perpetrated without accomplishing the purpose had in breaking and entering. That the ring was removed and the box of money seized was enough

1. CRIMINAL LAW: burglary: breaking and entering: evidence.

to justify the inference by the jury that the intent in enter-
ing was to steal and no more was essential to conviction.
Nor can it be said that there was no support in the evidence
to the finding that the intruder "broke" into the house.
None of the windows were found to have been disturbed,
and Laura testified that she heard the door close when her
mother left the house. From this it was to be inferred
that, in entering, the door must have been opened. That
others were at the house, or the door was left open some-
times, were facts for the consideration of the jury, but did
not necessarily exact a conclusion other than that the per-
petrator of the offense broke into the house by opening
the door. It is said that the testimony that Laura heard
the door close upon the departure of her mother was not
competent, but no reason therefor is assigned. It was of
a fact, and the circumstance that it was ascertained
through the sense of hearing instead of sight can make no
difference in the matter of proof. The accused was fifty-
one years old, and appears to have been regarded by those
who had employed him as honest. This was a circumstance
entitled to consideration, but not controlling, if the jury
believed him guilty, especially in view of his habits of
intoxication and others. It is enough to say, without
reviewing the evidence further, that it was such as to pre-
clude any interference by us with the verdict.

II. In the course of his argument to the jury, the
county attorney alluded to the round ball on the end of the
accused's nose, hinting that the jury might know what
caused it to blossom there, and proceeded:

2. SAME:
misconduct
in argument.

"If this man came to your bed at night-
time, and you are probably dreaming of
happy things, and you would be rudely awakened and see
this man with the ball on the end of his nose at your bed-
side, pointing a gun at you, you would be badly scared, and
there is none of you that would forget that picture." Laura
Stokes had testified that the man in her room had an "ugly

big nose with a ball right on the end of it;" and she had identified defendant thereby in part at least. She also testified that he had something in his hand, but could not tell whether it was a gun. In view 'of the evidence of his habits no vindication of the right of allusion in argument to the accused's nose and the cause of its condition is essential. Nor do we think that portion of the argument quoted open to criticism. No claim was made that defendant had a gun. The evident design of counsel in what he said was to impress on the minds of the jury that the situation of Laura Stokes was such that she would be likely to remember the features of the person removing the ring from her finger.

Some complaint is made of the instructions, but, as none of these are set out, exceptions thereto can not be considered.—*Affirmed.*